**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* EDWARD O'DONNELL, <br><br> Plaintiff, <br><br> – v. – <br><br> BANK OF AMERICA CORPORATION, successor to COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., and FULL SPECTRUM LENDING, <br><br> Defendants. | |
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Intervenor, <br><br> – v. – <br><br> COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE BANK, FSB, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., and REBECCA MAIRONE <br><br> Defendants. | **Case No. 12-cv-1422 (JSR)** <br><br> ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT REBECCA MAIRONE'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Marc L. Mukasey, Esq.
Michael C. Hefter, Esq.
Marvin R. Lange, Esq.
Ryan M. Philp, Esq.
Seth M. Cohen, Esq.
BRACEWELL & GIULIANI LLP
1251 Avenue of the Americas
New York, New York 10020
Tel:  (212) 508-6100
Fax: (800) 404-3970

*Attorneys for Defendant Rebecca Mairone*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................. 2

FACTUAL BACKGROUND ....................................................................................... 4

      A.    Countrywide's Relationship With The GSEs ............................................. 4

      B.    CHL's Move To Prime Loans And The Creation Of The HSSL ............... 5

      C.    Allegations Concerning Mairone ............................................................... 5

APPLICABLE LEGAL STANDARDS ....................................................................... 6

ARGUMENT ............................................................................................................... 8

I.      THE FIRREA CLAIM SHOULD BE DISMISSED BECAUSE THE
AMENDED COMPLAINT FAILS TO STATE A CLAIM THAT
MAIRONE VIOLATED THE MAIL OR WIRE FRAUD STATUTES ............... 8

      A.    The Amended Complaint Fails To Plead Adequately A Scheme To
Defraud The GSEs ..................................................................................... 9

      B.    The Amended Complaint Is Devoid Of Facts Showing Mairone
Knowingly Participated In The Alleged Scheme With An Intent To
Defraud The GSEs ..................................................................................... 9

            1.    The Amended Complaint Fails To Plead Adequate Facts
Showing That Mairone Knew That Her Conduct Was
Intended To Harm The GSEs ........................................................ 9

            2.    The Amended Complaint's Allegations Against
Mairone Fail For Lack Of Particularity Under Rule 9(b) ............. 12

II.     THE FIRREA CLAIM SHOULD BE DISMISSED BECAUSE THE
AMENDED COMPLAINT FAILS TO ALLEGE ADEQUATE FACTS
SHOWING THAT THE ALLEGED "VIOLATION" AFFECTED A
FEDERALLY INSURED FINANCIAL INSTITUTION ..................................... 13

      A.    The Allegations That The Alleged Violation Affected Shareholders
Of The GSEs Are Insufficient .................................................................. 14

      B.    The Allegations That The Alleged Violation Affected Countrywide
Bank Or BANA Are Insufficient .............................................................. 14

            1.    The Complaint Fails To Plead Adequately That
Countrywide Bank Or BANA Was Affected ................................. 14

## TABLE OF CONTENTS
### (continued)

**Page**

2.    The Amended Complaint Fails To Plead Sufficient Facts
To Show That Mairone's Alleged Violation Affected
Countrywide Bank Or BANA.........................................................16

CONCLUSION...........................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Al-Haideri v. Trs. of Columbia Univ. in City of N.Y.*,
No. 07 Civ. 106 (LTS) (DCF), 2007 WL 2187102, at *4 (S.D.N.Y. July 26, 2007) .............17

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)....................................................................................7, 8, 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)..................................................................................................7, 8

*Braswell v. United States*,
487 U.S. 99, 109-10 (1988) ................................................................................................16

*Browning Ave. Realty Corp. v. Rosenshein*,
774 F. Supp. 129, 138 (S.D.N.Y. 1991)........................................................................8, 13

*City of New York v. Smokes-Spirits.com, Inc.*,
541 F.3d 425, 446 (2d Cir. 2008),......................................................................................8

*Cohen v. Cohen*,
773 F. Supp. 2d 373, 384 (S.D.N.Y. 2011).......................................................................10

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752, 769 (1984) ....................................................................................................17

*Cruz v. FXDirectDealer, LLC*,
855 F. Supp. 2d 89, 97 (S.D.N.Y. 2012).............................................................................7

*Everson v. New York City Transit Auth.*,
216 F. Supp. 2d 71, 76-77 (E.D.N.Y. 2002) .....................................................................17

*Finley v. Giacobbe*,
79 F.3d 1285, 1295 (2d Cir. 1996)......................................................................................17

*Hemi Group, LLC v. City of New York*,
559 U.S. 1 (2010) ..................................................................................................................8

*ING Global v. UPS Oasis Comp Supply Corp.*,
No. 11 Civ. 5697 (JSR), 2012 WL 28259, at *4 (S.D.N.Y. Jan. 4, 2012).............................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
No. 91 Civ. 2923, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994).....................................13

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*,
474 U.S. 494, 501 (1986)......................................................................................................17

iii

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Nu-Life Constr. Corp. v. Bd. of Educ.*,
204 A.D.2d 106, 107, 611 N.Y.S.2d 529, 530 (1st Dep't 1994) ............................17

*Riviello v. Waldron*,
47 N.Y.2d 297, 302 (1979) ...................................................................................16

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
84 F.3d 629, 633 (2d Cir. 1996)...........................................................................7, 8

*Sathianathan v. Smith Barney, Inc.*,
No. 04 Civ. 7122 (DAB) (FM), 2006 WL 538152, at *24 (S.D.N.Y. Feb. 24, 2006)............17

*Starr v. Sony BMG Music Entm't*,
592 F.3d 314, 321 (2d Cir. 2010)..............................................................................8

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
250 F.3d 87, 101 (2d Cir. 2001)..............................................................................16

*U1it4less, Inc. v. Fedex Corp.*,
No. 11-CV-7163 (CS), 2012 WL 4459377, at *10 (S.D.N.Y. Sept. 25, 2012) .......................7

*United States v. Daugerdas*,
No. S3 09 Cr. 581 (WHP), 2011 WL 6020113, at *1 (S.D.N.Y. Apr. 5, 2011) .....................17

*United States v. Demauro*,
581 F.2d 50, 53 (2d Cir. 1978)................................................................................16

*United States v. Dupre*,
339 F. Supp. 2d 534, 539 (S.D.N.Y. 2004)...............................................................9

*United States v. Guadagna*,
183 F.3d 122, 129-30 (2d Cir. 1999) ....................................................................7, 11

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422, 480-81 (E.D.N.Y. 2007) .........................................................8

*United States v. Ionia Mgmt., S.A.*,
555 F.3d 303, 309 (2d Cir. 2009).............................................................................16

*United States v. Ohle*,
678 F. Supp. 2d 215, 228-29 (S.D.N.Y. 2010) .......................................................17

*United States v. Regent Office Supply Co.*,
421 F.2d 1174, 1180 (2d Cir. 1970).........................................................................7

*United States v. Starr*,
816 F.2d 94, 98 (2d. Cir. 1987)................................................................................9

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States v. Whitman*,
No. 12 Cr. 125 (JSR), 2012 WL 5505080, at *7 (S.D.N.Y. Nov. 14, 2012) ........................ 7, 9

**STATUTES**

12 U.S.C. § 1833a ................................................................................................ 2, 6, 13, 14, 16

18 U.S.C. § 982(a)(2) ................................................................................................................ 15

18 U.S.C. § 1341 .................................................................................................................. 6, 14

18 U.S.C. § 1343 ....................................................................................................................... 14

18 U.S.C. § 3293 ....................................................................................................................... 18

**RULES**

Federal Rule of Civil Procedure 9(b) ..................................................................... 1, 3, 8, 12, 13

Federal Rule of Civil Procedure 12(b)(6) .............................................................................. 1, 7

**TREATISES**

Restatement (Third) of Agency § 2.04 (2006) ......................................................................... 16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* EDWARD O'DONNELL, <br><br> Plaintiff, <br><br> – v. – <br><br> BANK OF AMERICA CORPORATION, successor to COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., and FULL SPECTRUM LENDING, <br><br> Defendants. | |
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Intervenor, <br><br> – v. – <br><br> COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE BANK, FSB, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., and REBECCA MAIRONE <br><br> Defendants. | **Case No. 12-cv-1422 (JSR)** <br><br> ECF Case |

Defendant Rebecca Mairone ("Mairone") respectfully submits this Memorandum of Law in support of her motion to dismiss the Amended Complaint of the United States of America (the "Amended Complaint"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

The case against Mairone is the Government's effort to find a scapegoat for its misconceived theory that the Entity Defendants[1] fraudulently sold mortgage loans to "government-sponsored enterprises" Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively the "GSEs") through the so-called "high speed swim lane" (referred to in the Amended Complaint as the "HSSL"). The Government amended its original complaint at the eleventh hour to name Mairone, the former Chief Operating Officer of the Full Spectrum Lending ("FSL") division of CHL, in a single cause of action under the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA"). The claim against Mairone is based on the wholly conjured theory that she engaged in mail and wire fraud in connection with the HSSL and the sale of certain unidentified loans to the GSEs. The Amended Complaint fails wholly to plead any facts with the requisite particularity from which a plausible claim for relief can be shown against Mairone.

The Amended Complaint rests on a fundamental misunderstanding of the nature and scope of the HSSL. Despite the length of the Amended Complaint and months of investigation by the Government, the Amended Complaint sets forth nothing more than conclusory factual allegations concerning Mairone's supposed role, together with other FSL executives, in "roll[ing] out" and implementing the HSSL. As the Government acknowledges, Mairone was part of a large team of people within FSL who were tasked with implementing the HSSL. These individuals included executives senior to her who oversaw and approved the HSSL and other

---

[1] The Entity Defendants are defined to be Countrywide Home Loans, Inc. ("CHL"), Countrywide Financial Corporation, Countrywide Bank, FSB ("Countrywide Bank"), Bank of America Corporation and Bank of America, N.A. ("BANA").

officers, including Ed O'Donnell, the Relator in this action and a senior level executive who was part of the underwriting team that was responsible for the initial design of the HSSL.  There is not a single factual allegation in the Amended Complaint that any one of these individuals designed and implemented the HSSL to be a mechanism to sell poor quality loans to the GSEs. To the contrary, the Amended Complaint alleges that the HSSL was implemented in response to a clear shift in FSL's business to originating and underwriting "prime" loans.  The notion that the HSSL was designed to be deceptive or concealed as a plan to sell mortgage loans with poor credit quality to the GSEs is pure supposition.

Against this backdrop, the Government attempts to state a FIRREA claim based on mail and wire fraud violations despite the fact that the Amended Complaint is devoid entirely of any factual allegation that Mairone (i) "devised" the HSSL; (ii) made any misrepresentations to the GSEs; (iii) had any involvement whatsoever with the GSEs; or (iv) sought to conceal or actually concealed any information from the GSEs.  The Government strains to satisfy its pleading burden by alleging in the most conclusory fashion that Mairone, lumped in with other unnamed FSL executives, "participated in the design and management of the HSSL model," "concealed the [HSSL] model and the resulting defect rates on [HSSL] loans" (in this regard, she is alleged merely to have instructed the removal of slides from an internal corporate presentation at CHL and that certain unidentified reports were not to be circulated outside of FSL), and told unidentified employees to "get with the program."  Even accepting these allegations as true, the Amended Complaint falls woefully short of pleading any circumstances constituting fraud by Mairone in satisfaction of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").

The Amended Complaint not only fails to plead the existence of a "fraudulent scheme," but also fails to plead Mairone's knowing participation in any such scheme.  Absent are any facts

from which it can be inferred that Mairone knew of the existence of the alleged scheme to defraud, knowingly participated in that scheme, or did so with the specific intent to harm the GSEs.  Thus, regardless of what the Government believes her role was in the "design and management" of the HSSL, the FIRREA claim fails based on the absence of facts showing these critical elements of mail and wire fraud violations.   The Amended Complaint similarly must be dismissed because it fails to allege any facts showing that the "violation" alleged against Mairone "affected" a "federally insured financial institution," as set forth in Section II, *infra*.

## FACTUAL BACKGROUND

To avoid duplication, we respectfully refer the Court to the Memorandum in Support of Motion to Dismiss of the Entity Defendants ("Deft. Mem.") for a complete discussion of the factual allegations of the Amended Complaint.  We discuss only the allegations of the Amended Complaint that are relevant to this motion.

### A.    Countrywide's Relationship With The GSEs

According to the Amended Complaint, the GSEs purchased residential mortgage loans from lenders, such as CHL.  ¶ 22.  In purchasing those loans, the GSEs operated on a "rep and warrant model," in which lenders represented and warranted that their loans complied with requirements and standards set forth by the GSEs.  ¶ 36.[2]

CHL is alleged to have sold residential mortgage loans to the GSEs pursuant to a long-term master agreement and short-term contracts.  ¶ 37.  The Amended Complaint quotes from the "Mortgage Selling and Servicing Contract"  ("MSSC") between CHL and Fannie Mae, pursuant to which CHL warranted that the loans it sold conformed to the GSEs' guidelines.  ¶ 39.

---

[2] All references to paragraph numbers are to the Amended Complaint.

If CHL breached a warranty in connection with the sale of a loan, the GSE could "demand that the lender repurchase the loan and/or reimburse the GSE for any loss incurred."  ¶¶ 36-48.

### B.    CHL's Move To Prime Loans And The Creation Of The HSSL

According to the Government, in the spring of 2007, the secondary market for subprime loans collapsed.  ¶ 58.  As alleged, CHL shifted its focus to "the prime, conventional lending market," purportedly so that it could sell the loans that it generated to the GSEs.  ¶¶ 3, 58-60.  In order to increase the speed of its loan processing, the Government alleges that CHL "rolled out a new 'streamlined' loan origination model."  ¶ 2.  The alleged goal of the "high-speed swim lane," also referred to as the "HSSL" or "Hustle," was to reduce the amount of time spent processing and underwriting loans, thereby boosting loan volume and revenue.  ¶ 3.

### C.    Allegations Concerning Mairone

During the relevant timeframe, Mairone was the Chief Operating Officer of the FSL division of CHL.  ¶ 20.  The Amended Complaint alleges generally that Countrywide implemented the HSSL "under [her] direction," ¶ 3, and that "FSL executives, and in particular Mairone, rolled out the HSSL," ¶ 69.  According to the Amended Complaint, Mairone is alleged to have:

- Visited selected processing centers, whose loan specialists reported ultimately to her, to promote the HSSL.  ¶¶ 69, 76.

- Decided to add "Dirty Prime" loans to the HSSL, and emailed that "[w]e need to start to move toward all loans into [the HSSL] process."  ¶¶ 74, 75.

- Eliminated (with other, unspecified, executives) "job aids," and instructed that "pre-funding checks" be conducted along with loan processing.  ¶¶ 78, 87.

- Instructed employees who prepared certain reports "not to circulate them outside of FSL," and told an employee to remove certain slides from a presentation to Countrywide executives.  ¶¶ 88, 111.

5

- Told employees who inquired about the HSSL to "get with the program." ¶¶ 83, 89.

The Amended Complaint also alleges that Countrywide executives, including Mairone, were informed about the risk that the HSSL would generate loans of poor quality that would be ineligible for sale to the GSEs. ¶¶ 7, 83, 101. In the charging paragraph, Mairone is alleged – with no detail – to have, "knowingly, or acting in deliberate ignorance and/or with reckless disregard of the truth,"

- "participated in the design and management of the HSSL model knowing that the resulting loans violated GSE guidelines;"

- "directed and/or participated in the origination of loans in violation of GSE guidelines;"

- "concealed the Hustle model and the resulting defect rates on Hustle loans;" and

- "directed the sale of loans originated under the Hustle model to the GSEs while knowing, or acting in deliberate ignorance and/or with reckless disregard of the truth, that they would be sold with the misrepresentation that they complied with the guidelines." ¶ 224.

Finally, the Amended Complaint alleges that Mairone "acted to protect FSL's revenues, and, in turn, her own personal compensation and career advancement," ¶ 225, and that the "scheme to defraud" affected numerous federally-insured financial institutions, ¶ 226.

## APPLICABLE LEGAL STANDARDS

The one cause of action asserted against Mairone is for civil penalties under 12 U.S.C. § 1833a. Under that statute, the Government alleges that Mairone committed mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343), and that "Mairone's scheme to defraud has affected numerous federally insured financial institutions." ¶ 226.

A complaint alleging mail and wire fraud must show: "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of

interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996); *U1it4less, Inc. v. Fedex Corp.*, No. 11-CV-7163 (CS), 2012 WL 4459377, at *10 (S.D.N.Y. Sept. 25, 2012); *Cruz v. FXDirectDealer, LLC*, 855 F. Supp. 2d 89, 97 (S.D.N.Y. 2012).

> As this Court recently explained:
>
>> It is axiomatic that proof of mail fraud requires specific intent in the sense of intent to harm.  Indeed, in this Circuit, the Government in a mail fraud case must prove more than just that the defendant intentionally committed the conduct that was fraudulent or that he knew it was deceptive; *the Government must also show that the defendant knew that his conduct was intended to harm the victim*, by depriving him of money or property.

*United States v. Whitman*, No. 12 Cr. 125 (JSR), 2012 WL 5505080, *7  (S.D.N.Y. Nov. 14, 2012) (emphasis added) (*citing United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970)); *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) ("the proof must demonstrate that the defendant had a conscious knowing intent to defraud . . . [and] that the defendant contemplated or intended some harm to the property rights of the victim.") (internal quotation marks omitted and alterations in original).

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under this standard, a plaintiff does not adequately plead a claim for relief merely by alleging a "conceivable" basis for that claim. *Twombly*, 550 U.S. at 570.  The facial plausibility standard is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Thus, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, dismissal is

7

appropriate." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010); *see Twombly*, 550 U.S. at 570 (where "plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). In making this determination, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a plaintiff alleges a claim based on a violation of the mail and wire fraud statutes, a plaintiff must additionally satisfy the particularity requirements of Rule 9(b). *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (2d Cir. 2008), *rev'd on other grounds sub nom. Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010). Moreover, Rule 9(b) is strictly applied where, as here, the Government is in possession of documents in response to investigatory subpoenas. *See, e.g.*, *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 480-81 (E.D.N.Y. 2007) (dismissing amended complaint for failure to plead mail and wire fraud with particularity because the Government had documents in its possession). Additionally, a complaint must allege particularized facts regarding each defendant's conduct. *Browning Ave. Realty Corp. v. Rosenshein*, 774 F. Supp. 129, 138 (S.D.N.Y. 1991) (complaint must particularize each defendant's alleged participation in the fraud).

## ARGUMENT

### I. THE FIRREA CLAIM SHOULD BE DISMISSED BECAUSE THE AMENDED COMPLAINT FAILS TO STATE A CLAIM THAT MAIRONE VIOLATED THE MAIL OR WIRE FRAUD STATUTES

The Government fails to plead adequately any of the elements of a mail or wire fraud violation. *See S.Q.K.F.C., Inc.*, 84 F.3d at 633.

A.     **The Amended Complaint Fails To Plead Adequately A Scheme To Defraud The GSEs**

As the Entity Defendants have demonstrated in their moving papers, the Amended Complaint fails to allege the existence of a scheme to defraud the GSEs in violation of the mail and wire fraud statutes.  *See* Deft. Mem. at 17-28; Supplemental Memorandum in Support of Motion To Dismiss ("Deft. Supp. Mem.").  Accordingly, the FIRREA causes of action should be dismissed as against all defendants.

B.     **The Amended Complaint Is Devoid Of Facts Showing Mairone Knowingly Participated In The Alleged Scheme With An Intent To Defraud The GSEs**

Even if the Amended Complaint were to properly allege a scheme to defraud the GSEs, the Government cannot state a claim against Mairone absent well-pleaded facts that she knowingly participated in the alleged scheme with the specific intent to defraud the GSEs.  *See Whitman*, 2012 WL 5505080 at * 7.

1.     **The Amended Complaint Fails To Plead Adequate Facts Showing That Mairone Knew That Her Conduct Was Intended To Harm The GSEs**

In order for the Government to plead that Mairone knowingly participated in the alleged scheme with the specific intent to defraud the GSEs, the Government must allege facts from which a reasonable inference can be drawn that Mairone:  (1) knew of the existence of a scheme to defraud; (2) knowingly participated in that scheme; and (3) did so with the specific intent to harm the GSEs.  *United States v. Dupre*, 339 F. Supp. 2d 534, 539 (S.D.N.Y. 2004); *see Whitman*, 2012 WL 5505080, *7 (intent to harm); *see also United States v. Starr*, 816 F.2d 94, 98 (2d. Cir. 1987).  The Amended Complaint fails to plead any facts to support these inferences.

In this regard, the Amended Complaint is more conspicuous for what it does *not* allege than for what it does.  It does not allege that the HSSL was itself deceptive.  Rather, it merely describes the HSSL as a process that reduced the "turn time" on loans.  ¶ 3.  It does not allege

that Mairone made any misrepresentations to the GSEs, or any representations at all for that matter.  It does not allege that Mairone had any contact with the GSEs.  And, other than in the charging paragraph, ¶ 224 – which is wholly conclusory in nature – the Amended Complaint does not allege that Mairone was involved in the sale of loans to the GSEs, or that she used the mail or wires in any context.

The Government struggles mightily to establish Mairone's knowing participation in the alleged scheme by stringing together a series of assertions about her conduct, none of which is deceptive in its own right.  The Amended Complaint alleges that Mairone:  directed the implementation of the HSSL, ¶ 3; decided to expand the amount of loans eligible for the HSSL, ¶¶ 74-75; determined, along with other unspecified Countrywide executives, to eliminate "job aids," which were "worksheets" that "served as checklists" for underwriting tasks, ¶¶ 78, 77; instructed that "pre-funding quality checks" be conducted on a "parallel track" with loan processing, ¶ 87; instructed Ed O'Donnell, the Relator, to remove slides from a loan quality presentation to Countrywide executives that "revealed the downward trend in FSL's loan quality," ¶ 111; told unspecified employees on two different occasions to "get with the program," ¶¶ 83, 89; reduced the responsibility of those who criticized the HSSL, ¶¶ 83, 111; was informed on various occasions that the HSSL posed a threat to loan quality, ¶¶ 7, 69, 83, 88, 101; and visited selected processing centers to promote the HSSL, ¶ 69.  Taken in isolation – or together – none of these facts supports an inference that Mairone  (1) knew of the existence of a scheme to defraud; (2) knowingly participated in that scheme; or (3) did so with the specific intent to defraud the GSEs.  Indeed, each of these acts is, at the very least, equally consistent with a legitimate business purpose to streamline the loan process.  Against these facts, a reasonable inference of misconduct is impossible. *Iqbal*, 556 U.S. at 678; *see Cohen v. Cohen*,

773 F. Supp. 2d 373, 384 (S.D.N.Y. 2011) (dismissing fraud claim because the factual

allegations raised "nothing 'more than a sheer possibility that [the] defendant ha[d] acted

unlawfully'") (quoting *Iqbal*, 556 U.S. at 678).

The Amended Complaint further lacks any allegations that connect Mairone to the

supposedly deceptive conduct.  The lynchpin of the alleged fraudulent scheme is the assertion

that the Entity Defendants – not Mairone – misrepresented to the GSEs that the HSSL loans

conformed to contractual representations and warranties in the MSSC.  *See* ¶¶ 36-48.  As set

forth in the Entity Defendants' briefs, these allegations plainly regard contractual breaches, and

thus cannot support a fraud claim, as a matter of law.  *See* Deft. Mem. at 19-25; Deft. Supp.

Mem.  But, even if that were not the case, there is no basis to attribute the contractual

representations and warranties to Mairone.[3]   Indeed, the Amended Complaint acknowledges as

much.  *See, e.g.*, ¶ 40 ("Countrywide's and Bank of America's representations");  ¶ 45

("Countrywide's (and later Bank of America's) representations"); *see also* ¶¶ 114-45 (referring

to Countrywide's representations in connection with particular loans).   As such, these alleged

"misrepresentations" cannot provide a basis to infer that Mairone acted with fraudulent intent.[4]

*Guadagna*, 183 F.3d at 129-130 (2d Cir. 1999).

Similarly, the Government's allegations that Mairone "concealed the Hustle model and

the resulting defect rates on Hustle loans" do not provide a basis to infer that she intended to

---

[3] For the reasons set forth in Section I(B)(2), *infra*, the Amended Complaint's conclusory
allegation that "Defendants" misrepresented that certain unspecified HSSL loans complied with
GSE requirements, ¶ 112, is insufficient as a matter of law to plead a misrepresentation by
Mairone.

[4] The Amended Complaint also points to statements by Andrew Gissinger, executive managing
director of CHL, in an August 2007 internal Countrywide memorandum (the "Gissinger
Memo").  ¶¶ 7, 65, 84.  Not only does the Amended Complaint fail to allege that the Gissinger
Memo was provided to the GSEs, but, in any event, none of Mr. Gissinger's statements can be
attributed to Mairone.

defraud the GSEs.  ¶¶ 218, 224.   The Amended Complaint does not, and cannot, allege that Mairone concealed anything *from the GSEs*.  Rather, the Amended Complaint alleges only that Mairone concealed FSL audit reports and other information reflecting quality concerns with respect to the HSSL process *internally*, or, stated differently, that Mairone attempted to conceal information from Countrywide executives outside Countrywide's FSL division.  *See* ¶ 88 ("Again, rather than alter or abandon the HSSL model, Mairone instructed those who prepared the reports not to circulate them outside of FSL."); ¶ 111 ("Mairone instructed O'Donnell to remove certain slides from a loan quality presentation to Countrywide executives because the slides revealed the downward trend in FSL's loan quality.").  Even accepted as true, these allegations provide no basis to infer that Mairone intended to defraud the GSEs.  Therefore, the Amended Complaint should be dismissed as against Mairone.

### 2.   The Amended Complaint's Allegations Against Mairone Fail For Lack Of Particularity Under Rule 9(b)

The FIRREA cause of action against Mairone also fails for the independent reason that the Amended Complaint fails to plead Mairone's conduct in furtherance of the alleged fraudulent scheme with the particularity required by Rule 9(b).  The Amended Complaint alleges vaguely and without foundation that Mairone "direct[ed]" Countrywide's implementation of the HSSL. ¶ 3.  The Government contends that the HSSL improperly eliminated quality control "toll gates" at a time when Countrywide was supposed to be tightening its underwriting practices.  ¶¶ 4, 70, 78, 83.  Specifically, the Amended Complaint takes issue with four aspects of the HSSL:  (1) the elimination of so-called job aids, ¶ 78; (2) the removal of underwriters and compliance specialists in the underwriting process, ¶¶ 70, 79; (3) the alleged expansion of the authority of "loan specialists" and "funders," ¶¶ 76, 83; and (4) the alleged elimination of a quality control component from the compensation structure for loan specialists and funders, ¶ 81.  Yet, apart

from the allegation concerning her alleged role in the elimination of job aids, ¶ 78, Mairone is *not even mentioned by name*.  Even the allegation regarding the job aids improperly lumps Mairone in with other unspecified "Countrywide executives," without attributing any specific conduct to her.  This sort of conclusory, group pleading is insufficient to satisfy Rule 9(b) as a matter of law.  *See ING Global v. UPS Oasis Comp Supply Corp.*, No. 11 Civ. 5697 (JSR), 2012 WL 28259, at *4 (S.D.N.Y.  Jan. 4, 2012) ("[The] complaint . . . simply lump[s] the defendants together in largely conclusory statements. . . .  This will not suffice."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)."); *Browning*, 774 F.Supp. at 138.

## II.   THE FIRREA CLAIM SHOULD BE DISMISSED BECAUSE THE AMENDED COMPLAINT FAILS TO ALLEGE ADEQUATE FACTS SHOWING THAT THE ALLEGED "VIOLATION" AFFECTED A FEDERALLY INSURED FINANCIAL INSTITUTION

Under 12 U.S.C. § 1833a, a violation of the mail or wire fraud statute can give rise to civil liability only if it is a violation "affecting a federally insured financial institution."  The Government alleges two theories on which Mairone's alleged violations purportedly meet this test.  As a matter of law, neither allegation suffices.

### A.   The Allegations That The Alleged Violation Affected Shareholders Of The GSEs Are Insufficient

The Government's contention that shareholders of the GSEs were affected by the alleged fraud, ¶¶ 151-58, is discussed at length in the Entity Defendants' memoranda.   For all of the reasons set forth therein, the Government's contention that Mairone's alleged fraud "affected" the GSEs' shareholders, within the meaning of section 1833a, fails.

**B.    The Allegations That The Alleged Violation Affected Countrywide Bank Or BANA Are Insufficient**

In direct response to the Entity Defendants' motion to dismiss the original complaint, the Government sought to cure the defective assertion that the GSEs' shareholders were affected by adding an additional theory in the Amended Complaint.  The Government now claims that, in addition to the GSEs' shareholders, BANA and Countrywide Bank were somehow "affected" by the alleged scheme.  This new theory fares no better.

**1.    The Complaint Fails To Plead Adequately That Countrywide Bank Or BANA Was Affected**

Under section 1833a, it is not sufficient for the alleged *conduct* to have affected a federally-insured financial institution.  The statute, as relevant here, creates liability for "a violation of . . . section . . . 1341 or 1343 of Title 18 affecting a federally insured financial institution."  Thus, based on the clear statutory text, the *violation* must have affected the institution.  Here, because the alleged violation entails a scheme to defraud the GSEs, it is that *fraud*, and not merely the creation of a process that might result in low-quality loans, that must have affected the federally-insured financial institution in order to implicate section 1833a.

Evidently recognizing this requirement, the Government added the following paragraph to the Amended Complaint:

> Additionally, BANA and Countrywide Bank, themselves federally-insured financial institutions, were affected by Defendants' fraud.  Defendants' fraudulent conduct has resulted in significant liabilities to the GSEs for, among other things, repurchase claims.  To date, BANA and/or Countrywide Bank has directly or indirectly paid billions to settle repurchase demands from the GSEs on defective loans, including HSSL loans.

¶ 159.  Stripped of the legal conclusions in the first two sentences, the Government bases its entire claim on the single remaining sentence that somehow Countrywide Bank and BANA were affected by the alleged fraud because one or the other of them "has directly or indirectly" paid to

settle the GSEs' repurchase claims.  This vague and conclusory allegation fails to satisfy the

Government's burden and is clearly inadequate for at least two reasons.

First, the Government does not allege that either Countrywide Bank or BANA was liable

to the GSEs.  Paragraph 159 of the Amended Complaint is carefully phrased and contains no

such allegation.  Rather, it merely states that the alleged fraud "has resulted" in liabilities to the

GSEs.  It does not allege what entity was supposedly liable.[5]

Second, the Government merely alleges that Countrywide Bank "and/or" BANA has

"directly or indirectly" paid money to settle repurchase claims.  The Amended Complaint does

not specify what it means by "directly or indirectly."  The ambiguity of the phrase makes it

impossible to determine what the Government intended, and therefore impossible to determine

whether payments – by an unspecified entity – could, as a matter of law, affect Countrywide

Bank or BANA.[6]

Thus, the Government has not pled that any alleged conduct affected a federally-insured

financial institution, and the FIRREA claim should be dismissed.

> **2.     The Amended Complaint Fails To Plead Sufficient Facts To Show
> That Mairone's Alleged Violation Affected Countrywide Bank Or
> BANA**

Even if the Government were to have pled adequately that defendants' violation affected

Countrywide Bank or BANA (which it does not), the FIRREA claim would still fail.  As the

---

[5] Moreover, it refers to liabilities for, "among other things," repurchase claims.  The Amended
Complaint nowhere identifies the nature of or basis for any such additional liabilities.

[6] When Congress enacted FIRREA, it did use the term "directly or indirectly" in a different
context.  Thus, 18 U.S.C. § 982(a)(2), added by FIRREA, requires the court, in imposing
sentence on a conviction of various crimes – including mail or wire fraud "affecting a [ ]
financial institution" – to order forfeiture of property constituting or derived from proceeds the
defendant "obtained directly or indirectly, as the result of such violation."  It is instructive that
Congress did not choose to use that language in referring to crimes "affecting a financial
institution."

Entity Defendants establish, the Government cannot plead a claim under section 1833a based on the allegation that the violation affected each Entity Defendant *itself*. For the same reason, as an employee of CHL, Mairone cannot, as a matter of law, be found to have affected Countrywide Bank and BANA.

It is axiomatic that a corporation can act only through its employees and agents. *See, e.g.*, *Braswell v. United States*, 487 U.S. 99, 109-10 (1988); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001). In the civil context, it is "hornbook law . . . [that] the doctrine of respondeat superior renders a master vicariously liable for a tort committed by his servant while acting within the scope of his employment." *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979) (citations omitted); Restatement (Third) of Agency § 2.04 (2006) ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment."). Similarly, in the criminal context, corporations may be held liable for acts of employees committed within the scope of their employment. *E.g.*, *United States v. Ionia Mgmt., S.A.*, 555 F.3d 303, 309 (2d Cir. 2009); *United States v. Demauro*, 581 F.2d 50, 53 (2d Cir. 1978).

The Amended Complaint does not allege, or even suggest, that, Mairone was a "rogue" employee acting outside the scope of her employment. There is no allegation that she acted contrary to her employer's interests, stole from it, violated company policy, or put practices into place that were unknown to or contrary to the wishes of her superiors. She is alleged to have done nothing more or less than what her employer wanted her to do. Indeed, the Government acknowledges that her intention was to "protect FSL's revenues." ¶ 225. To be sure, she is alleged to have enhanced her own compensation and career consistent with her employer's goals. Her interests and those of her employer are alleged to be entirely aligned. As a result, if the

16

Entity Defendants' alleged violations cannot as a matter of law "affect" Countrywide Bank or BANA, neither can hers.

It would be anomalous if, in the FIRREA context, an individual could potentially be liable for conduct undertaken within the scope of her employment, for the benefit of her employer and with the alleged enthusiastic support of the employer, yet the employer could have no such liability.  Absent some explicit indication, Congress should not be assumed to have intended to make such a drastic change in the traditional rule of entity liability.  *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").[7]

For these reasons, any contention that Mairone can be liable for a violation "affecting a federally-insured financial institution" is meritless as a matter of law, and the FIRREA claim against her should be dismissed.[8]

---

[7] It is also instructive that, because of the unity of interests between corporation and employees (so long as those employees are acting within the scope of their employment), a corporation cannot be held to have conspired with its officers or employees.  *E.g.*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984); *Al-Haideri v. Trs. of Columbia Univ. in City of N.Y.*, No. 07 Civ. 106 (LTS) (DCF), 2007 WL 2187102, at *4 (S.D.N.Y. July 26, 2007); *Sathianathan v. Smith Barney, Inc.*, No. 04 Civ. 7122 (DAB) (FM), 2006 WL 538152, at *24 (S.D.N.Y. Feb. 24, 2006);  *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 76-77 (E.D.N.Y. 2002).  So, too, for the same reason, an employee cannot be liable for inducing his employer's breach of contract so long as he is acting within the scope of his employment.  *E.g.*, *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996); *Nu-Life Constr. Corp. v. Bd. of Educ.*, 204 A.D.2d 106, 107, 611 N.Y.S.2d 529, 530 (1st Dep't 1994).  Permitting an employee to be held liable in the present situation even though the employer has no potential liability would be inconsistent with this unity of interest.

[8] The "affecting a financial institution" language appears in other statutory provisions added by FIRREA.  Thus, for example, for mail fraud or wire fraud "affecting a financial institution," the statute of limitations is extended from the usual five years to ten years.  18 U.S.C. § 3293. Courts construing this provision have held that, for statute of limitations purposes, an individual's conduct may affect his employer.  *See, e.g.*, *United States v. Daugerdas*, No. S3 09

## <u>CONCLUSION</u>

For the foregoing reasons, Mairone respectfully requests that the Court grant her Motion to Dismiss the Amended Complaint, and enter an Order dismissing the Amended Complaint as against her, with prejudice, and granting such further relief as the Court deems just and proper.

Dated:   February 28, 2013
         New York, New York

BRACEWELL & GIULIANI LLP

By:   */s/ Marc L. Mukasey*
      Marc L. Mukasey
      Michael C. Hefter
      Marvin R. Lange
      Ryan M. Philp
      Seth M. Cohen

1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 508-6100
Fax:  (212) 508-6101

*Attorneys for Defendant Rebecca Mairone*

---

Cr. 581 (WHP), 2011 WL 6020113, at *1 (S.D.N.Y. Apr. 5, 2011); *United States v. Ohle*, 678 F. Supp. 2d 215, 228-29 (S.D.N.Y. 2010).  We are not aware, however, of any FIRREA case imposing or permitting the imposition of liability on an individual under an "affecting a financial institution" theory when the individual's employer was not liable under that theory.