**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* EDWARD O'DONNELL,<br><br>Plaintiff,<br><br>– v. –<br><br>BANK OF AMERICA CORPORATION, successor to COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., and FULL SPECTRUM LENDING,<br><br>Defendants. | |
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor,<br><br>– v. –<br><br>COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE BANK, FSB, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., and REBECCA MAIRONE,<br><br>Defendants. | **Case No. 12-cv-1422 (JSR)**<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF BANK DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT BLAMING DEFENDANTS FOR GLOBAL ECONOMIC ISSUES AND PUBLIC HARMS (BANK DEFENDANTS' MOTION *IN LIMINE* NO. 9)**

Brendan V. Sullivan, Jr.
Enu A. Mainigi
Malachi B. Jones
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5000
*Counsel for Defendants Bank of America Corporation and Bank of America, N.A.*

Richard M. Strassberg
William J. Harrington
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
*Counsel for Defendants Countrywide Financial Corporation, Countrywide Bank, FSB, and Countrywide Home Loans, Inc.*

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014, 2009 WL 3111766, at \*7 (S.D.N.Y. Sept. 28, 2009) ...................................................................6

*Fifty-Six Hope Road Music Ltd. v. UMG Recordings, Inc.*, 08-civ-6143 (DLC), 2011 WL 3874861, at \*5 (S.D.N.Y.  Aug. 31, 2011) ..........................................................................2

*Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 177, 192, 193 (S.D.N.Y. 2008) ..............................................................................................................................6, 7

*Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09 Civ. 2675 (KBF), 2012 WL 526722, at \*3 (S.D.N.Y. Feb. 14, 2012) .................................................................4, 6

*Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) ..........................................7

*United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) ....................................................7

*United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995).........................................................6

*United States v. Lotsch*, 102 F.2d 35, 37 (2d Cir. 1939)...............................................................3

*United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007).........................................................3

## OTHER AUTHORITIES

Fed. R. Evid. 401 ...........................................................................................................................2

Fed. R. Evid. 402 ...........................................................................................................................2

Fed. R. Evid. 403 ......................................................................................................................3, 4

Financial Crisis Inquiry Comm'n, *The Financial Crisis Inquiry Report* (2011) ..........................5

Mark Landler & Eric Dash, *Drama Behind a Banking Deal*, N.Y. Times, Oct. 15, 2008, at A1. ........................................................................................................................................5

Patrick Rucker & Jonathan Stempel, *Bank of America gets big government bailout*, Reuters, Jan. 16, 2009 ................................................................................................................4

Joe Weisenthal, *Documents Reveal How Paulson Forced Banks to Take TARP Cash*, Business Insider, May 13, 2009 ...............................................................................................5

## <u>INTRODUCTION</u>

The Bank Defendants move to preclude any argument or evidence about certain global economic matters that are irrelevant to this case and would be unfairly prejudicial if allowed. Specifically, the Court should preclude the government from mentioning any of the following before the jury:

1.      Any alleged consequences to taxpayers, the government, or the public at large from Defendants' alleged fraud;

2.      The U.S. Treasury's decision to provide funding to Bank of America as part of the government's Troubled Asset Relief Program; and

3.      Any claim that the Bank Defendants are responsible for causing the worldwide financial crisis in whole or in part.

Each of the above arguments would be irrelevant to any element of the government's FIRREA claim, especially now that the government has abandoned any argument that the alleged fraudulent scheme "affected" financial institutions that invested in Fannie Mae and Freddie Mac. Such arguments also would be wholly speculative, as the government has no evidence that Defendants' alleged fraud actually has impacted taxpayers, the government, or the public, or what role, if any, the Bank Defendants had in the worldwide financial crisis.  Finally, such evidence or argument would unfairly prejudice the Bank Defendants by improperly arousing jurors' frustrations with taxes, the government's fiscal problems, or the economy generally.

That is not to say that evidence and testimony about the broader economic climate should be excluded.  On the contrary, the Bank Defendants welcome any competent evidence regarding the state of the mortgage market, changes in housing prices, and other economic factors during the relevant time period, as such evidence may be relevant to whether the HSSL loans were

fraudulent, breached any contractual representations and warranties, or caused injury to Fannie

Mae or Freddie Mac.  What the Bank Defendants seek to exclude is argument and evidence that

*they* were responsible even in part for causing these macroeconomic factors, or that the much

narrower conduct of which the Bank Defendants are accused caused similar widespread harms.

*Those* contentions are not relevant to any issue in dispute in this case.

## ARGUMENT

I.      **Evidence or Argument About Consequences to Taxpayers, the Government, or the
        Public Should Be Excluded**

    A.      **Such Evidence and Arguments Are Irrelevant**

    In this case, the government must prove that Defendants committed mail or wire fraud

when they sold to Fannie and Freddie allegedly defective loans originated through the HSSL

process and that the fraud "affected" Countrywide Bank, FSB or Bank of America, N.A. (the

"Banks").  Evidence concerning any alleged consequences of the fraud on taxpayers, the

government, or the public at large does not make any fact of consequence in this case more or

less probable than it would be without such evidence, and accordingly it is inadmissible under

Evidence Rules 401 and 402.  The alleged victims of the alleged fraud are Fannie Mae and

Freddie Mac; the alleged "affected" parties are the Banks.  The government no longer claims a

derivative "effect" on other financial institutions resulting from the GSEs' conservatorship, so

consequences even to GSE investors are no longer relevant to any element of the offense.  Far

less can the government prove its case by reference to any supposed consequences to the U.S.

Treasury, to other banks, to home buyers, or to taxpayers.

    B.      **Such Arguments Would Be Speculative**

    Any argument to the jury must be grounded in evidence admitted at trial.  If an argument

lacks an evidentiary basis, it "would invite jury speculation and is barred."  *Fifty-Six Hope Road*

2

*Music Ltd. v. UMG Recordings, Inc.*, 08-civ-6143 (DLC), 2011 WL 3874861, at *5 (S.D.N.Y. Aug. 31, 2011) (barring plaintiff's proposed argument regarding dilution of royalty payments because of absence of predicate evidence).

The government has no evidence on which to base an argument that Defendant's alleged fraud has resulted in negative consequences for taxpayers, the government, or the public.  No document, or fact witness, or expert witness makes such a claim.  That is unsurprising, as the Bank Defendants demonstrated in their summary judgment papers that the HSSL loans did not contribute to the GSEs' conservatorship.  *See* Mem. In Supp. Of Mot. For Summ. J. at 30–33. Any argument suggesting that the alleged nine-month fraud impacted the government, much less taxpayers or the public, would be nothing more than speculation.

### C.     Such Evidence and Arguments Would Be Unfairly Prejudicial

"'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403, 1972 Advisory Committee Notes.  Arguments that play on the pecuniary interests of jurors as taxpayers are widely understood to be improper because they "encourage[] the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007) (internal quotation marks omitted). The danger of this type of improper argument is especially acute in cases where the defendant is accused of defrauding the government or an entity backed by the government.  *See, e.g.*, *United States v. Lotsch*, 102 F.2d 35, 37 (2d Cir. 1939) (L. Hand, J.) (concluding that it was "plainly" improper for prosecutor to argue that "since the United States guaranteed bank deposits, the money lent to these borrowers came out of the jurors' pockets").

Similarly, evidence or argument that attempts to link a particular defendant to the Nation's recent economic struggles, whether it be the government's fiscal troubles or any of the

3

multitude of negative effects of the mortgage crisis and recession, is unfairly prejudicial.  Such arguments may cause the jury to view the defendant unfavorably or to associate the defendant with those struggles, which undoubtedly have affected every member of the jury.  *Cf. Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09 Civ. 2675 (KBF), 2012 WL 526722, at *3 (S.D.N.Y. Feb. 14, 2012) ("The financial crisis has deeply affected this country, and efforts to connect plaintiffs to that crisis may cause the jury to view them unfavorably."  "Any relevance of such a discussion is . . . far outweighed by the danger of unfair prejudice . . . .").

Any argument to the jury about the supposed consequences of the alleged fraud on taxpayers, the government, or the public would do nothing more than stir up the juror's passions and prejudices and encourage a decision on those improper bases rather than on the evidence. The danger of this unfair prejudice substantially outweighs any supposed probative value such evidence or argument could have.  In addition, such evidence or argument would only waste time and confuse the issues, as the Defendants would have to introduce evidence to rebut that baseless accusation.  *See* Fed. R. Evid. 403.

## II.   Evidence of Bank of America's Receipt of TARP Funds Should Be Excluded

As part of the government's response to the worldwide financial crisis, the Bank of America, like every other large financial institution in the country, received funds from Treasury's Troubled Asset Relief Fund ("TARP").  The receipt of these funds has been pejoratively termed a "bailout" by some.  Patrick Rucker & Jonathan Stempel, *Bank of America gets big government bailout*, Reuters, Jan. 16, 2009, *available at* http://www.reuters.com/article/2009/01/16/us-banks-idUSTRE50F1Q720090116.  Whatever term one uses to describe this funding, it is irrelevant to this case.  Nothing about the fact that the Bank of America received TARP funds is relevant to the question of whether a division of Countrywide fraudulently originated and sold certain mortgages.  It also is not relevant to the

4

question of whether those HSSL loans "affected" Countrywide and the Bank of America.  There can be no serious argument that Bank of America received TARP funds because of the HSSL loans, which were a tiny subset of loans originated by Countrywide.[1]

In addition, argument and evidence related to the reasons for the TARP program, and why Bank of America received funds from it, is exactly the kind of ancillary issue that would waste time and needlessly confuse the jury.  Reference to a bank "bailout" would, moreover, improperly appeal to the emotions of the jury the same way that reference to costs to taxpayers would.  The government should be precluded from mentioning the TARP funding in this case.

## III.   Evidence and Argument Related to the Cause of the Worldwide Financial Crisis Should Be Excluded

The government has not propounded any evidence that the Bank Defendants, or the banking industry more generally, caused the global financial crisis or any disruption in the mortgage market.  The global financial meltdown was a once-in-a-generation, multifaceted event to which a substantial number of factors contributed.  Any allegation that one firm or set of firms "caused" the financial crisis would be wrong and highly misleading.[2]

In any event, any such evidence would be irrelevant because the reasons for the global economic downturn are not at issue in this trial.  Rather, this case is about whether a division in Countrywide committed fraud in originating and selling a small subset of the loans it sold to the

---

[1] In fact, the reasons that banks took the TARP funds are highly complex and disputed.  *See, e.g.,* Joe Weisenthal, *Documents Reveal How Paulson Forced Banks to Take TARP Cash*, Business Insider, May 13, 2009, *available at* http://www.businessinsider.com/uncovered-tarp-docs-reveal-how-paulson-forced-banks-to-take-the-cash-2009-5; Mark Landler & Eric Dash, *Drama Behind a Banking Deal*, N.Y. Times, Oct. 15, 2008, at A1.

[2] To say there is a "cause" or a limited number of "causes" to the financial crisis is incorrect. The Financial Crisis Inquiry Commission spent months conducting interviews and reviewing documents, and even it took 400 pages to summarize its findings, with another 150 pages of dissent.  *See* Financial Crisis Inquiry Comm'n, *The Financial Crisis Inquiry Report* (2011), *available at* http://fcic-static.law.stanford.edu/cdn_media/fcic-reports/fcic_final_report_full.pdf.

GSEs.  Any argument that Defendants are responsible for the financial crisis would be wholly irrelevant to those issues and should be excluded under Evidence Rules 401 and 402.  *See Island Intellectual Prop. LLP*, 2012 WL 526722, at *3 ("abstract discussion of the financial crisis" not relevant to claims of patent infringement).

Even if the government could point to some relevant evidence about the cause of the financial crisis (it cannot), the probative value of any such evidence would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403.  Under Rule 403, evidence is prejudicial if it "involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995).  "The Court will exclude such evidence if it has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 177 (S.D.N.Y. 2008) (citation and internal quotation marks omitted); *see id.* at 192, 193 (granting in part a motion to prohibit the plaintiff from characterizing admissible evidence and testimony using terms such as "securities fraud," "illegal trading," "insider trading," "inside information," and "market manipulation" where "the only apparent reason for such trial strategy would be to show the jury 'that defendants are bad people.'" (citation and internal quotation marks omitted)).

Here, any argument about the Defendants' supposed role in the worldwide financial crisis and its devastating effects could serve no other purpose than prejudicing the jury against the Defendants by arousing the jurors' frustrations with the economy or large financial institutions. *See Island Intellectual Prop. LLC*, 2012 WL 526722, at *3 ("The financial crisis has deeply affected this country, and efforts to connect plaintiffs to that crisis may cause the jury to view them unfavorably."); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ.

10014, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (granting defendants' in limine request to prohibit plaintiff from "linking the Bondholders, or hedge funds in general, to the financial crisis"); *Highland Capital Mgmt.,* 551 F. Supp. 2d at 177.  Such argument would, in short, violate the fundamental principle that "parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices," *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008), because such argument increases the risk "that a jury will convict for [reasons] other than those charged . . . ."  *United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) (citation and internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Bank Defendants respectfully request that the Court preclude the government from introducing any evidence or making any argument about consequences to taxpayers, the government, or the public at large from Defendants' alleged fraud, the government's "bailout" of the Bank Defendants, or any alleged role the Bank Defendants had in causing the worldwide financial crisis.

Date:   September 17, 2013                    Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:  s/Enu Mainigi
Brendan V. Sullivan (admitted *pro hac vice*)
Enu A. Mainigi (admitted *pro hac vice*)
Malachi B. Jones (admitted *pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC  20005
Tel: (202) 434-5000
Fax: (202) 434-5029

*Counsel for Defendants Bank of America*
*Corp. and Bank of America, N.A.*

7

By:  s/Richard M. Strassberg

Richard M. Strassberg
William J. Harrington
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800

*Counsel for Defendants Countrywide
Financial Corporation, Countrywide Home
Loans, Inc., and Countrywide Bank, FSB*